DEBORAHA GOODWIN, Plaintiff-Appellant, v. ITT COMMERCIAL FINANCE CORPORATION, f/n/a ITT Diversified Credit Corporation, *et al.*, Defendants-Appellees (Judith Wallentin, Plaintiff; ITT Commercial Finance Corporation, f/n/a ITT Diversified Credit Corporation, *et al.*, Defendants).

First District (2nd Division)   No. 85—1462

Opinion filed August 5, 1986.

William L. Guild III, of Wheaton, for appellant.

Marvin S. Berz and Sheryl E. Fuhr, both of Chicago, for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs sued defendants for conversion when the boat plaintiffs had purchased was repossessed from the inventory of the seller. The trial court granted defendants' motion to dismiss pursuant to section 2—619(a)(9) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), and plaintiff Goodwin appeals.

On July 16, 1982, plaintiffs Judith Wallentin and Deboraha Goodwin purchased a new 1982 Thunderbird motorboat, a motor and a trailer from T & V Marine in Berwyn, Illinois. The purchase price of $13,744.20 was partially financed by Lawndale Trust & Savings Bank, and T & V Marine was paid in full before plaintiffs took possession of the boat. Between July and August 1982, T & V Marine repaired failures of the boat's power steering and hydraulic system, and a malfunctioning of the crank shaft. In their complaints, plaintiffs alleged that the windshield shattered, causing them to return the boat and motor to T & V Marine for repair in August 1982 and to meet at T &

V Marine with Stephen Antalek, president of T & V Marine, and George Conklin, the national sales manager for Thunderbird Products Corporation and Porter Company. Plaintiffs alleged that they advised Antalek and Conklin during this meeting that they co-owned the boat. The four discussed the cause of the shattering of the windshield and Conklin offered to have the windshield repaired free of charge. When plaintiffs picked up the boat later, the windshield had been repaired and new seat cushions had been added. Plaintiffs contacted a lawyer about the incident and he advised them to return the boat for safe-keeping until the repair problems had been resolved and some solution could be reached with T & V Marine and the bank. The bank advised the same thing.

Plaintiffs alleged that on September 14, 1982, plaintiff Goodwin returned the boat to T & V Marine for additional repairs. A list entitled "Inspection" was written and signed by Goodwin and Don Boberg of T & V Marine. Plaintiff Wallentin characterized this list as an itemization of needed repairs.

In October 1982, while the boat was still at T & V Marine, T & V Marine ceased doing business. ITT had a perfected security interest in all inventory of T & V Marine according to a wholesale financing agreement under which ITT extended credit to T & V Marine for the purchase of boats from Porter and Thunderbird. ITT at all times had possession of the certificate of origin for plaintiffs' boat. When T & V Marine defaulted under the terms of the financing agreement, possession of the inventory, including plaintiffs' boat, was turned over to ITT in October 1982. Plaintiffs' complaints alleged, on information and belief, that ITT instructed Porter and Thunderbird, as its agents and through Conklin, to transport plaintiffs' boat to Sand Castle Marine, Inc., in Ohio and that T & V Marine permitted Conklin to accomplish this, all without plaintiffs' knowledge or approval. Plaintiffs alleged that Sand Castle placed the boat for sale in its marina and damaged the boat by leaving it in open weather for one year. Plaintiffs alleged they were unable to contact T & V Marine, whose phones were disconnected, and did not regain possession of the boat until July or October of 1983. In separate suits later consolidated by the trial court, plaintiffs sought recovery from defendants for tortious conversion of personal property.

Defendants ITT, Porter, and Thunderbird moved to dismiss plaintiffs' complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure, asserting that the plaintiffs had rescinded the contract to purchase the boat, and that ITT was unaware of plaintiffs' interest in the boat until June 28, 1983, the date plaintiffs represented to ITT

that they had purchased the boat, and the date plaintiffs demanded its return. Plaintiffs have not refuted defendants' assertion that ITT immediately returned the boat and motor to plaintiffs at ITT's expense. Defendant's motion was supported by an affidavit and an exhibit of plaintiffs' December 1982 verified countercomplaint against T & V Marine and Lawndale Trust & Savings Bank. The countercomplaint was entitled "Complaint for the Rescission of a Written Contract Procured by Fraudulent Representations" and alleged, *inter alia,* that counterplaintiffs "did on September 14, 1982, tender the boat and returned same to *** T & V Marine, Inc."

Plaintiffs responded with memoranda and an affidavit of Judith Wallentin. The affidavit asserted that the boat was returned on September 14, 1982, for repairs, and that there was never discussion of or a demand made for the return of her payment on the boat. After a hearing on defendants' motion, the trial court ordered the plaintiffs' complaints dismissed. ITT, Thunderbird and Porter have filed a brief in response to plaintiff Goodwin's appeal to this court.

Plaintiff Goodwin contends that defendants' motion to dismiss pursuant to section 2—619(a)(9) was not sufficient to warrant the summary dismissal of the complaints without a trial. Defendants respond that plaintiff's verified countercomplaint filed in an earlier suit contained a binding judicial admission that she had voluntarily returned the boat to T & V Marine and had rescinded the agreement. They claim that admission precludes, as a matter of law, any liability for conversion in the instant action since plaintiff's rescission negated her right in the property and her right to immediate possession of it.

■ Affirmative matter within the meaning of section 2—619(a)(9) must be something more than evidence offered to refute a well-pleaded fact in the complaint, for such well-pleaded facts must be taken as true for purposes of the motion. (*Russo v. Boland* (1982), 103 Ill. App. 3d 905, 908, 431 N.E.2d 1294.) To defeat plaintiff's claim, defendants' assertion of affirmative matter must negate a cause of action completely or refute crucial conclusions of law or material fact contained in or inferred from the complaint. (*Giannini v. First National Bank* (1985), 136 Ill. App. 3d 971, 979, 483 N.E.2d 924.) We conclude that defendants' affirmative allegations were insufficient to bar plaintiff's claim.

■ Defendants argue that plaintiff is bound by her verified pleading in a different cause and that the trial court properly resolved an issue of law in which there were no factual questions. We disagree because the prior pleading is not a judicial admission in this cause. Judicial admissions, which have the effect of withdrawing facts from issue

and dispensing with the need to prove those facts (*Beverly Bank v. Coleman Air Transport* (1985), 134 Ill. App. 3d 699, 703, 481 N.E.2d 54), include admissions in pleadings which form the basis of the action (*Chambers v. Appel* (1946), 392 Ill. 294, 306, 64 N.E.2d 511). Verified statements in pleadings from one cause, however, when used in another cause, are ordinary evidentiary admissions which are not binding upon the party who made them. (See *Anfinsen Plastic Molding Co. v. Konen* (1979), 68 Ill. App. 3d 355, 361, 386 N.E.2d 108.) Such statements may be admitted in a later action as statements against interest, but they may be controverted or explained. *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 51, 183 N.E.2d 547.

■ In the instant case, plaintiff Wallentin responded to defendants' motion with an affidavit stating that when plaintiff Goodwin returned the boat to T & V Marine on September 14, 1982, a list of needed repairs was written and signed by both Goodwin and an agent for T & V Marine. The copy of the list of repairs attached to the affidavit is simply headed, "Inspection of F.1 [Formula 1] as per S.A. [Sales Agreement]." The affiant also stated that these repairs were not done, that she had never discussed with defendants the return of her payment, and that, to her knowledge, no such demand had ever been made. Nowhere in the record have defendants represented, independent of their reliance on plaintiff Goodwin's countercomplaint for rescission, that the boat was returned to them other than for repairs. Neither does the record indicate the disposition of the plaintiffs' countercomplaint for rescission of the written contract. In light of plaintiff's clear and permissible contradiction of defendants' claim that plaintiff rescinded the sales contract and abandoned all interest in the boat, defendants' motion merely attacked the well-pleaded facts in plaintiff's complaint and the questions left unanswered constitute a factual dispute which was improperly disposed of in a 2—619(a)(9) motion.

In light of our disposition of this issue, we do not need to and do not address defendants' other contentions.

Accordingly, we reverse the trial court's order and remand this cause for further proceedings.

Reversed and remanded.

BILANDIC, P.J., and HARTMAN, J., concur.