M.A.K., Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, d/b/a Rush Behavioral Health Center Du Page, Defendant-Appellee.

Third District   No. 3—99—0618

Opinion filed July 18, 2000.—Modified on denial of rehearing October 11, 2000.

Lawrence M. Kaschak and T. Donald Henson (argued), both of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of LaSalle, for appellant.

Jeffrey I. Cummings (argued) and George F. Galland, Jr., both of Miner, Barnhill & Galland, P.C., of Chicago, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff filed suit against Rush-Presbyterian-St. Luke's Medical Center (Rush) and Royal Maccabees Life Insurance Company (Royal Insurance). Plaintiff alleged that Rush breached its physician/patient relationship with him by releasing his medical records, which contained information about his treatment for alcohol abuse, to Royal Insurance. The trial court issued judgment on the pleadings to Rush. We reverse and hold that the phrase "any physician, medical practitioner, hospital, clinic, health care facility or other medical or medically related facility," does not meet the general designation requirement of the Code of Federal Regulations (Federal Regulations) (42 C.F.R. § 2.1 (1993)) dealing with the release of alcohol treatment records.

## FACTS

Plaintiff applied for a disability insurance policy with Royal Insurance. In conjunction with his application, he executed an authorization for release of his medical records on October 12, 1994. The authorization provided, in pertinent part, as follows:

"I AUTHORIZE any physician, medical practitioner, hospital, clinic, health care facility [or] other medical or medically related facility *** having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of me *** to give to [Royal Insurance] *** any and all such information.

* * *

I UNDERSTAND THAT my *** medical records may be protected by certain Federal Regulations, especially as they apply to any drug

or alcohol abuse data. I understand that I *** may revoke this authorization at any time as it pertains to any such drug or alcohol abuse data by written notification, however, any action taken prior to revocation will not be affected."

Royal Insurance issued a policy to plaintiff.

Plaintiff was admitted to Rush for alcohol abuse treatment on January 13, 1995. During his treatment plaintiff contacted his insurance agency, Brennan and Stuart (Brennan), about the possibility of filing a disability claim. Brennan, in turn, contacted Royal Insurance, which sent plaintiff a preliminary report concerning his potential claim. Plaintiff later decided not to file a claim and so notified Royal Insurance. Plaintiff was discharged from Rush approximately six weeks after his admission.

In April of 1995, Rush received a copy of plaintiff's medical records release authorization from Royal Insurance. Rush released the records. Contained in the records released to Royal Insurance was a notation that plaintiff stated the onset of his alcohol dependence took place eight months prior to his admission. In other words, plaintiff allegedly admitted to having a problem with alcohol before he applied for the Royal Insurance policy. After reviewing the records, Royal Insurance determined that plaintiff had misrepresented his condition of health when he applied for the disability policy. Specifically, plaintiff responded "No" to the following question: "Has any person proposed for coverage ever: sought advice or treatment for or been arrested for or been addicted to the use of alcohol or drugs?" Given the new turn of events, Royal Insurance canceled plaintiff's policy and refunded his premiums.

Plaintiff filed suit against Rush and Royal Insurance. He claimed that Rush (1) breached its physician/client relationship with him, (2) invaded his privacy and (3) negligently inflicted emotional distress upon him. Rush did not answer the counts against it, but instead filed a motion for judgment on the pleadings, alleging that it released plaintiff's records pursuant to a valid authorization. As part of his answer to the motion, plaintiff included the affidavit of his attorney who stated that, during a meeting with the medical director for Rush, Dr. Paul Feldman, Feldman admitted that plaintiff's records should not have been released to Royal Insurance. The trial court granted Rush's motion for judgment on the pleadings. Plaintiff later voluntarily dismissed his claims against Royal Insurance, and he now appeals the trial court's issuance of judgment on the pleadings to Rush.

## ANALYSIS

■ According to the Illinois Code of Civil Procedure, "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2—

615(e) (West 1998). When considering such a motion, the court is to discern whether there is any issue of material fact presented by the pleadings and, if not, which party is entitled to a judgment as a matter of law. *Daymon v. Hardin County General Hospital*, 210 Ill. App. 3d 927, 569 N.E.2d 316 (1991). The only matters to be considered in ruling on the motion are the allegations of the pleadings. *In re Marriage of O'Brien*, 247 Ill. App. 3d 745, 617 N.E.2d 873 (1993). Copies of written instruments attached to a pleading as an exhibit are considered to be a part of the pleading. 735 ILCS 5/2—606 (West 1998). If the pleadings raise an issue of material fact, evidence must be taken to resolve the issue and judgment may not be entered on the pleadings. *In re Estate of Davis*, 225 Ill. App. 3d 998, 589 N.E.2d 154 (1992). We review a trial court's issuance of a judgment on the pleadings *de novo*. *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 696 N.E.2d 22 (1998).

Plaintiff essentially maintains that the trial court erred in granting judgment on the pleadings to Rush because it improperly determined that the authorization executed by the parties was valid. In particular, plaintiff argues that issues of fact exist as to whether the authorization complied with Federal Regulations. The parties do not cite, nor have we ourselves discovered, any authority interpreting the relevant provisions of the regulations. This, therefore, is an issue of first impression.

■ Under Illinois law, medical records such as those at issue in this case may be disclosed only if the patient gives written authorization for such a disclosure and that authorization is executed in compliance with the applicable Federal Regulations. 20 ILCS 301/30—5(bb)(2)(A) (West 1998). The applicable Federal Regulations require the written authorization to include (1) the specific name or general designation of the program or person permitted to make the disclosure; (2) the name or title or the individual or the name of the organization to which disclosure is to be made; (3) the name of the patient; (4) the purpose of the disclosure; (5) how much and what kind of information is to be disclosed; (6) the signature of the patient; (7) the date the consent is signed; (8) a statement that the consent is subject to revocation; and (9) the date, event or condition upon which the consent will expire. 42 C.F.R. § 2.31 (1993).

■ Plaintiff contests whether the first requirement of section 2.31 was satisfied by the authorization in this case. The relevant provision of the authorization refers to the individuals and programs entitled to make disclosures as "any physician, medical practitioner, hospital, clinic, health care facility [or] other medical or medically related facility." The authorization does not include the specific name of the

disclosing program or individual. We must, therefore, determine if the authorization meets the "general designation" requirement.

The term "general designation" is not defined in the Federal Regulations. See 42 C.F.R. § 2.11 (1993). Undefined terms of a statute should be given their ordinary and popularly understood meaning. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 695 N.E.2d 481 (1998). "General" is an adjective ordinarily defined as "involving or belonging to the whole *** class, or type." Webster's Third New International Dictionary 944 (1986). "[A] distinguishing name," however, is the common definition of the noun "designation." Webster's Third New International Dictionary 612 (1986). The authorization provides for disclosure by "any physician, medical practitioner, hospital, clinic, health care facility [or] other medical or medically related facility *** having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of [the patient]." We believe that this terminology is at best imprecise and far too generic to be considered a general designation as that term is commonly understood and as is required by the regulations. Because it is apparent that the trial court relied on the authorization when it granted Rush's motion for judgment on the pleadings, we therefore reverse and remand.

We note that our resolution of this issue involves solely the interpretation of the plain language of the authorization and is thus an issue of law and not a factual issue as argued by plaintiff. *Coles-Moultrie Electric Cooperative v. City of Sullivan*, 304 Ill. App. 3d 153, 709 N.E.2d 249 (1999). Moreover, our determination on this issue is dispositive of the appeal. Accordingly, we need not and do not reach the parties' remaining arguments.

The judgment of the circuit court of Will County is reversed and the cause is remanded for further proceedings consistent with this order.

Reversed and remanded.

HOLDRIDGE and HOMER, JJ., concur.